EXHIBIT "A"

PREFERRED MORTGAGE
ON THE WHOLE OF

M/V RIVERBOAT QUEEN
Official No. (Hull No.) SGU01508D888

Riverfront Development Corporation of Delaware
815 Justison Street
Wilmington, DE 19801
SHIPOWNER AND MORTGAGOR

In favor of

Spirit of Pennsylvania Dinner Charters, Inc.
333 N. Front Street
Philadelphia, PA 19106
MORTGAGEE

Dated as of April __, 2016

Discharge Amount: $200,000.00,
Together with interest

{00172043.DOC; 7}

## PREFERRED SHIP MORTGAGE

This PREFERRED SHIP MORTGAGE (the "Mortgage") is granted as of this ___ day of March, 2016, by Riverfront Development Corporation of Delaware (the "Shipowner" and/or "Mortgagor"), the sole owner of 100% of the interest in the Vessel, as defined below, the address of which is:

815 Justison Street<br>
Wilmington, DE 19801

in favor of Spirit of Pennsylvania Dinner Charters, Inc., the mortgagee of 100% of the interest in the Vessel ("Mortgagee"), the address of which is:

328 South Street, 2nd Floor Rear Office B<br>
Philadelphia, PA 19147

with respect to the vessels M/V Riverboat Queen, Hull No. SGU01508D888, (the "Vessel") in connection with Mortgagor's purchase of the Vessel from Mortgagee in the original principal amount of Two Hundred Thousand Dollars and No Cents ($200,000.00), and with the obligation to repay the principal thereof, with interest, and other amounts evidenced from time to time by that Purchase of Riverboat Queen Vessel Agreement dated March ___, 2016, made by the Mortgagor in favor of Mortgagee (such Agreement, as assigned, assumed, amended, renewed, replaced, or otherwise modified from time to time is referred to herein as the "Agreement"); and the Promissory Note dated March ___, 2016 made by the Mortgagor in favor of Mortgagee (the "Note"); and other Security Documents (collectively, the "Indebtedness"). As used in this Mortgage, "Security Documents" means any of the Agreement, this Mortgage, the Note, or any security agreement, mortgage, security agreement, assignment, guaranty, or other agreement, instrument, certificate, or document now or hereafter related to, the Agreement, as assigned, assumed, amended, renewed, replaced, or otherwise modified from time to time.

## NOW, THEREFORE, SHIPOWNER AND MORTGAGEE AGREE AS FOLLOWS:

In consideration of the sale of the Vessel to Shipowner, and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Shipowner hereby grants, conveys, mortgages, pledges, assigns, transfers, sets over and confirms to Mortgagee, its successors and assigns, the whole of the Vessel described above, which includes, without limitation:

    (a)    All of its engines, machinery, tools, boats, anchors, chains, tackle, fittings, navigation equipment, and all other equipment and appurtenances appertaining or belonging to such vessel, whether now owned or hereafter acquired, whether on board or not,

    (b)    All present and future accessions to such vessel, equipment and appurtenances, and all other additions, improvements, and replacements hereafter made in or to such vessel, equipment and appurtenances, and

{00172043.DOC; 7}

2

(c)     All present and future hire, freights and other earnings of the vessel,

(d)     All operating authority and contractual privileges and rights respecting the vessel, including without limitation those granted by governmental authorities (collectively, the "Operating Rights"),

(e)     All insurance policies, proceeds and other rights respecting the vessel (collectively, the "Insurance Rights"), including but not limited to (1) all policies and contracts of insurance (which expression includes all entries of the Vessel in Protection and Indemnity Associations or War Risk Associations) in respect of the vessel required by this Mortgage whether now or hereafter to be effected, and all renewals of or replacements for the same, (2) when the context so admits, all reinsurance of such insurances, (3) all claims, returns of premium and other monies and claims for monies due and to become due with regard to losses under said insurances or in respect of said insurances, (4) all other rights of Shipowner under or in respect of said insurances, and (5) all proceeds of any of the foregoing; provided further, that the assignments made hereby shall at all times be subject to the provisions of this Mortgage and to the Shipowner's rights with respect to payments and proceeds reserved to it under said provisions, all of which are referred to in this Mortgage as the "Vessel." Shipowner hereby further grants a security interest under the Uniform Commercial Code as enacted in the State of Delaware (the "UCC") in all other equipment, and general intangibles of Shipowner relating to the Vessel. All property encumbered by this Mortgage is hereinafter referred to as the "Collateral."

This Mortgage is granted in order to secure the payment of the indebtedness according to the terms and conditions of the Agreement and the Note, the payment of all other sums may be due under the Agreement or hereunder from time to time, and the observance of all of the terms and conditions of the Agreement, the Note, and this Mortgage. Anything herein to the contrary notwithstanding, the maximum amount of the direct or contingent obligations that is or may become secured by this Mortgage at any time is Two Hundred Thousand Dollars ($200,000.00), excluding interest, expenses, and fees (all or which are set out in the Security Documents), as contemplated by 46 U.S.C. §31322(b)(3).

TO HAVE AND TO HOLD, all and singular, the property subject hereto unto Mortgagee, its successors and assigns, to its use and benefit forever.

PROVIDED, HOWEVER, that if Shipowner, its successors and assigns, pays the Indebtedness in full and performs all the terms, conditions, and covenants of this Mortgage, then this Mortgage shall terminate.

1.     *Covenants, Representations and Warranties of Shipowner*.  Shipowner agrees, represents, and warrants as follows:

1.1     *Payment and Compliance with Terms*.     Shipowner shall timely pay the Indebtedness as evidenced by the Agreement and shall observe every one of the terms, expressed or implied, herein and in the Agreement and Security

Documents.  The obligations of Shipowner to Mortgagee hereunder, if Shipowner consists of more than one person, and the obligations of the general partners, joint venturers or members of Shipowner, if Shipowner is, respectively, a partnership, joint venture or association, are joint and several.  As used herein, "Person" means any individual, association, joint venture, partnership, limited liability company, corporation, trust, government or governmental unit, or other entity.

1.2     *Authority, Etc.*  The Corporate Mortgagor is validly duly incorporated, existing and in good standing in the State of Delaware.  Shipowner represents and warrants that its Board of Directors has authorized it to execute this Mortgage, and that all action necessary to authorize execution, delivery and performance of its obligations under the Agreement and Mortgage have been effectively taken.  The Mortgagor's address stated above is its Executive Director's office.  Mortgagor's Federal Taxpayer Identification No. is 51-0373101.

1.3     *Compliance with Chapter 313 of Title 46 of the United States Code.*  Mortgagee shall comply with all the provisions of Chapter 313, Title 46 of the United States Code, as amended from time to time, in order to establish and maintain this Mortgage as a preferred mortgage.  Shipowner agrees to execute and deliver to Mortgagee, as reasonably requested of it by Mortgagee, any and all instruments, documents, financing statements and other evidence of the security interest of Mortgagee in the Collateral suitable for recording in any and all jurisdictions of Mortgagee's choice.  Shipowner agrees that this Mortgage shall constitute a security agreement underlying such instruments, documents and financing statements.  Mortgagee is irrevocably appointed Shipowner's attorney-in-fact coupled with an interest to execute and file in Shipowner's name such instruments, documents and financing statements if Shipowner fails to do so promptly upon request by Mortgagee.

1.4     *Notice to Third Parties.*  Shipowner shall keep a certified copy of this Mortgage based on board the Vessel with its documents, if the Vessel is self-propelled, shall exhibit the Mortgage to all persons having business with the Vessel which might give rise to a lien thereon, and shall post a conspicuous notice in the wheelhouse and master's cabin of the Vessel, in 10-point type or larger, stating as follows:

NOTICE OF MORTGAGE: THIS VESSEL IS ENCUMBERED BY A PREFERRED MORTGAGE TO SPIRIT OF PENNSYLVANIA DINNER CHARTERS, INC. UNDER CHAPTER 313 OF TITLE 36 OF THE UNITED STATES CODE, AS AMENDED.  UNDER THE TERMS OF SAID MORTGAGE NEITHER THE OWNER, ANY CHARTERER, THE MASTER OF THIS VESSEL, NOR ANY OTHER PERSON HAS ANY RIGHT, POWER OR AUTHORITY TO CREATE, INCUR OR PERMIT TO BE IMPOSED

{00172043.DOC; 7}

4

UPON THIS VESSEL ANY LIEN WHATSOEVER EXCEPT FOR CREWS' WAGES OR SALVAGE.

1.5    *Title and Possession.*  Shipowner represents and warrants that it lawfully owns and is lawfully possessed of all legal and equitable title to the whole of the Vessel and the other Collateral, and Shipowner warrants and shall defend its title and possession for the benefit of Mortgagee against the claims and demands of all persons.

1.6    *Liens and Encumbrances.*  Shipowner represents, warrants, and agrees that the Collateral is and shall remain free and clear of all liens, liability for forfeiture, defeasances, charterparties and other rights to possession or services of the Vessel, and all other encumbrances whatsoever, excepting only those for crews' wages that are not in arrears.  Neither Shipowner, nor any charterer, nor any other person shall have the authority to create, and shall not create or allow to continue any liens or encumbrances on the Collateral, other than for Permitted Claims. Shipowner shall promptly pay or provide security reasonably acceptable to Mortgagee for all salvage, general average, and tort claims that may arise with respect to the Vessel, whether or not they give rise to liens thereon.

1.7    *Legal Actions Against the Collateral.*  If a complaint is filed against the Collateral or if the Collateral is otherwise attached or detained in any court or by any government or other authority, Shipowner shall promptly notify Mortgagee by telephone, confirmed by letter, and shall cause the Collateral to be released and all liens thereon other than the lien of this Mortgage to be discharged within ten days, failing which Mortgagee may, but is not required, to arrange for the discharge thereof, or for the posting of security therefor, at Shipowner's expense. Shipowner authorizes Mortgagee or its appointees to appear in the name of Shipowner, its successors and assigns, in any court of any nation where a suit is filed against the Collateral, and to take such action as to it as may seem proper towards the defense of such suit and the purchase or discharge of such lien.

1.8    *Sale, Mortgage, Charter or Other Transfer.*  Shipowner shall not sell, mortgage, bareboat charter or otherwise transfer the Collateral or any interest therein, or control thereof, nor shall it agree to do the same, without the written consent of Mortgagee, which shall not be unreasonably withheld, conditioned, or delayed. Each such sale, mortgage, charter or other transfer shall be subject to the provisions of this Mortgage and to the lien it creates.

1.9    *Territorial Limits of the Vessel.*  Shipowner shall not remove the Vessel from Vessel use limitations: inland and territorial waters of the United States. Shipowner shall not abandon the Vessel in a port outside of the jurisdiction of the Federal courts of the United States of America.

1.10    *Lawful Operation.*  Shipowner agrees that it shall cause the Collateral to be maintained, equipped and operated, in compliance with all treaties, laws and regulations that are applicable from time to time.  Shipowner shall possess, and retain aboard the Vessel, valid certificates evidencing compliance therewith. Shipowner shall comply with the Zero Tolerance anti-drug policy of the U.S. Government, and shall inform all who work aboard or otherwise board the Vessel that the use or possession of illegal drugs and drug paraphernalia aboard the Vessel is prohibited.  Shipowner shall obtain, maintain and file all bonds and other evidence of financial responsibility, pollution contingency and prevention plans, and the like as is required from time to time by applicable laws and regulations.

1.11    *Documentation, Hailing Port, Citizenship.*  Shipowner shall at all times keep the Vessel so documented and inspected as required by applicable laws and regulations of the United States of America.  Shipowner shall not change the registry or flag of documentation of the Vessel without the written consent of Mortgagee, not to be unreasonably withheld, conditioned, or delayed.  Shipowner is and shall continue to be entitled to own, document and operate the Vessel in the Vessel Trade listed in this section pursuant to Chapter 121 of Title 46 of the United States Code, as amended or replaced, from time to time, and the regulations thereunder. Shipowner represents that the Hailing Port of the Vessel shall be Wilmington, Delaware.

1.12    *Maintenance and Alteration.*  Shipowner shall, without cost or expense to Mortgagee, maintain the Vessel seaworthy, and in good running order and repair, failing which, Mortgage may, but is not obligated to, effect maintenance of and repairs to the Vessel.  Shipowner shall not make or permit any change in the structure, propulsion, generators, machinery, equipment, or type of the Vessel without prior written approval of Mortgagee.  However, Shipowner may remove equipment from the Vessel free and clear of the lien of this Mortgage if (a) it first replaces such equipment with equipment of the same or greater value, (b) it causes all damage to the Vessel caused by such removal and replacement to be promptly repaired, and (c) such removal and replacement will not adversely affect the fair market value of the Collateral.

1.13    *Insurance.*  Shipowner shall comply with the following insurance covenants: (a)  For so long as this Mortgage is in effect, Shipowner shall, at its own expense, obtain and maintain with respect to the Collateral the following insurance: (1) marine hull and machinery insurance in an amount not less than the fair market value of the Vessel from time to time as determined by a marine survey prepared by a qualified marine surveyor acceptable to Mortgagee, (2) primary protection and indemnity insurance in an amount not less than $1,000,000.00 with excess Vessel P&I in the amount of $20,000,000.00, (3) worker's compensation and U.S. Longshore and Harbor Workers' Compensation Act insurance as required by law, and (4) mortgagee's interest insurance, war risk insurance, other third-party liability insurance, pollution clean-up insurance and insurance against such other risks or

liabilities as may be reasonably specified from time-to-time by Mortgagee, or as may be required by law.

(b)     All policies of insurance shall be obtained from underwriters or protection and indemnity associations and effected by brokers approved by Mortgagee, and in amounts and forms, with terms and conditions, including, without limitation, deductible and franchise clauses, mortgage clauses and other endorsements, acceptable to Mortgagee, and shall not be amended or terminated without Mortgagee's prior written consent, all not to be unreasonably withheld, conditioned, or delayed.

(c)     All policies, amendments, endorsements, binders and other interim insurance contracts shall name Mortgagee as an additional assured and the sole loss payee (except that Mortgagee shall be the sole assured on all polices of Mortgagee's interest insurance, and Mortgagee need not be an additional assured on the policies described in Subsection (a)(3) above). No assureds or loss payees (other than Shipowner's customers, for whom Shipowner is providing services utilizing the Vessel, for the sole purpose of adding them as co-assureds or grantees for waiver of subrogation) shall be added to any policy without the advance written consent of Mortgagee, not to be unreasonably withheld, conditioned, or delayed.

(d)     All policies, binders and interim contracts of insurance shall provide for thirty (30) days' prior notice by certified letter to be delivered to Mortgagee at the address set forth or changed as provided herein, by underwriters or insurance carriers in the event of amendment, alteration or cancellation.   Certified copies of the originals of all policies, amendments, endorsements, binders and other interim insurance contracts shall be deposited with Mortgagee.

(e)     Insurance proceeds payable as a result of loss of or damage to the Collateral, or for any liability, shall be applied, as directed by Mortgagee in its reasonable discretion, to the Indebtedness and other amounts evidenced or secured hereby or to the repair or replacement of the Collateral, and otherwise in accordance with the application of funds provisions of this Mortgage, except that, if Shipowner is not in default hereunder, amounts payable in respect of insured liabilities may be disbursed to Shipowner in reimbursement of Shipowner's discharge of such liability, or to the party to whom the insured liability is owed, in exchange for a full release thereof.

(f).     If Shipowner at any time fails to comply with any of the insurance requirements hereunder, Mortgagee may, but is not obligated to, procure such insurance and pay the cost thereof.   The acquiescence by Mortgagee in the placement of insurance contrary to the terms of this Mortgage in one or more instances shall not establish a consent or course of dealing with respect to such noncompliance in any other instances.

(g)     Shipowner shall not permit the Vessel to engage in any voyage or activity not permitted under the policies of insurance at the time in effect with respect to the Collateral without first covering the Collateral to the amount herein provided for by insurance for such voyage or activity, and shall not do or permit any act to be done whereby any insurance may be impaired or suspended.

(h)     Shipowner shall remain liable for all obligations under the Insurance Rights. Mortgagee shall have no obligations or liabilities under the Insurance Rights, although Mortgagee may, without obligation, perform Shipowner's obligations under the Insurance Rights. Shipowner hereby agrees to deliver immediately notice of this clause to all underwriters and protection and indemnity associations with respect to the Insurance Rights in effect from time to time, and agree that Mortgagee may effect such notice by deliver of a copy of this Mortgage. Shipowner represents, warrants and agrees that Shipowner has not assigned, pledged, created any security interest in, or otherwise encumbered, the whole or any part of the rights and other property hereby assigned, nor have they agreed to do so, to anyone other than Mortgagee, and shall not do so without Mortgagee's prior written consent, not to be unreasonably withheld, conditioned, or delayed.   Shipowner shall defend, at its own expense, Mortgagee's rights hereunder against the claims or demands of all third parties whomsoever. Mortgagee shall, in addition to the rights hereby conferred, or otherwise existing or arising at law, in equity, in admiralty, or otherwise, be entitled to all the rights of a secured creditor generally provided under the UCC, Section 9-109 of the UCC notwithstanding.

1.14  *Mortgagee Access to Collateral and Papers*.  At all reasonable times Shipowner shall allow Mortgagee access to the Collateral and Shipowner's other premises, and shall permit Mortgagee to inspect and copy of all documents pertaining to the Collateral and other business records pertaining to Shipowner, including without limitation, to those documents and/or records in electronic form.

1.15  *Mortgagee Recording Expenses*.  The expenses and fees incurred in recording this Mortgage and procuring certified copies thereof shall be borne by Shipowner.

2.  *Events of Default and Remedies*.  The following provisions apply to defaults and remedies under this Agreement.

2.1  *Events of Default*.  In case any one or more of the following events (each an "Event of Default") happen:

(a)     Default in the making of any payment due under the Agreement or any other obligation under the Security Documents for the payment of money due from Shipowner, any principal obligor, or any guarantor, of all or any part of the Indebtedness to Mortgagee and the default continues for a period of five (5) days after Mortgagee gives Shipowner or Guarantor, as applicable, notice of the default.

(b)     Any representation or warranty now or hereafter made by Shipowner, a principal obligor, or any Guarantor in the Agreement, this Mortgage, any other Loan Document or any other documents provided to Mortgagee is or shall become untrue or breached;

(c)     Shipowner fails to comply with any of the insurance covenants under this Mortgage or any other Loan Document;

(d)     Shipowner, a principal obligor, or any Guarantor otherwise fails to comply with any other obligation under the Agreement, this Mortgage or any other Loan Document or fails to

comply with any other obligation contained in any credit agreements, notes, collateral or other documents relating to any obligations of Shipowner, a principal obligor, or Guarantor to Mortgagee and such failure continues for a period of fifteen (15) days after Mortgagee gives Shipowner notice of the default;

(e)    Shipowner, a principal obligor, or any Guarantor: (1) becomes unable, or admits in writing its inability, to pay its debts as they mature, (2) becomes the subject of proceedings in bankruptcy or insolvency, (3) makes a general assignment for the benefit of creditors, (4) enters into an arrangement with a group of creditors; (5) dies, or is judicially determined to be an incompetent, if an individual, (6) dissolved, or is the subject of any dissolution proceeding, if other than an individual, or (7) enters any action for the purpose of effectuating any of the foregoing; or

(f)    A receiver, trustee or liquidator is appointed for the Collateral or the Collateral is arrested, repossessed, attached, seized, requisitioned or expropriated, in any judicial proceeding or nonjudicial realization on a lien or encumbrance, or by any governmental or quasi-governmental authority, and Shipowner does not obtain the release of the Collateral or a termination of the action within sixty (60) days;

(g)    A writ or warrant of attachment, seizure or any similar process for an amount in excess of $250,000 shall be issued by any court against the Collateral or all or any material portion of the remaining property of Shipowner, a principal obligor, or a Guarantor and such writ or warrant of attachment o any similar process is not released or bonded within sixty (60) days after its entry; or

(h)    The Collateral, or any portion thereof, is condemned or expropriated under power of eminent domain by any legally constituted governmental authority.

2.2    Collateral Account. Upon the occurrence of an Event of Default and at any time thereafter, Mortgagee may require Shipowner to establish a cash collateral account (the "Collateral Account") in the name and under the control of Mortgagee at Mortgagee or a bank satisfactory to Mortgagee, which shall be subject to access and withdrawal by Mortgagee only. In such event, all payments (in the form of checks, drafts, cash or otherwise) received by Shipowner in satisfaction, in whole or in part, of any Collateral of Shipowner shall be deposited by Shipowner in the Collateral Account. Shipowner will deposit for credit to the Collateral Account all such items of payment and remittances within two (2) business days of the receipt thereof, and shall not commingle any such items of payment and remittances with any of Shipowner's other property. Funds in the Collateral Account are and shall be subject to a security interest in favor of Mortgagee to secure the indebtedness, and Mortgagee may apply or cause to be applied (subject to collection) any or all of the balance from time to time standing to the credit in the Collateral Account against the Indebtedness in such order as determined by Mortgagee.

2.3    *Accounts.* While an Event of Default has occurred and is continuing, Shipowner will make no material change to the terms of any Collateral without the prior written permission of Mortgagee. Upon the occurrence of an Event of Default, and at any time thereafter, Shipowner upon request of Mortgagee will promptly notify (and Shipowner hereby authorizes Mortgagee so to notify) each account debtor and obligor in respect of any Collateral that such Collateral has been assigned to Mortgagee hereunder, and that any payments due or to become due in respect of such Collateral are to be made directly to Mortgagee or its designee.

2.4    *Remedies.* In each and every Event of Default, Mortgagee shall have the right, without demand or notice, to:

(a)    Exercise all the rights and remedies in foreclosure and otherwise given to Mortgagee by the provisions of Chapter 313 of Title 46 of the United States Code, as amended or replaced from time to time;

(b)    Exercise all the rights and remedies in foreclosure and otherwise given to a secured party under the UCC and other applicable law (including the Uniform Commercial Code as in effect in another applicable jurisdiction) and, in addition, Mortgagee may, without being required to give any notice, except as herein provided or as may be required by mandatory provisions of law;

(i) withdraw all cash in the Collateral Account and apply such cash and other cash, if any, then held by it as Collateral against the Indebtedness or (ii) sell the Collateral or any part thereof at public or private sale, for cash, upon credit or for future delivery, and at such price or prices as mortgagee may deem satisfactory. Mortgagee may be the purchaser of any or all of the Collateral so sold at any public sale (or, if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, at any private sale) Shipowner shall execute and deliver such documents and take such other action as Mortgagee deems necessary or advisable in order that any such sale may be made in compliance with law. Upon any such sale Mortgagee shall have the right to deliver, assign and transfer to the purchaser thereof the Collateral so sold. Each purchaser at any such sale shall hold the Collateral so sold to it absolutely and free from any claim or right of whatsoever kind, including any equity or right of redemption of Shipowner which may be waived, and Shipowner, to the extent permitted by law, hereby specifically waives all rights of redemption, stay or appraisal which it has or may have under any law now existing or hereafter adopted. Shipowner agrees that ten (10) days prior written notice of the time and place of any sale or other intended disposition of any of the Collateral constitutes "reasonable notification" within the meaning of the provisions of Article 9 of the UCC, except that shorter or no notice shall be reasonable as to any Collateral which is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market. The notice (if any) of such sale shall (1) in case of a public sale, state the time and place fixed for such sale, and (2) in the case of a private sale, state the day after which such sale may be

{00172043.DOC; 7}

10

consummated.  Any such public sale shall be held at such time or times within ordinary business hours and at such place or places as Mortgagee may fix in the notice of such sale.  At any such sale the Collateral may be sold in one lot as an entirety or in separate parcels or portions, as Mortgagee may determine.  Mortgagee shall not be obligated to make any such sale pursuant to any such notice.  Mortgagee may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale, and such sale may be made at any time or place to which the same may be so adjourned.  In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by Mortgagee until the selling price is paid by the purchaser thereof, but Mortgagee shall not incur any liability in case of the failure of such purchaser to take up and pay for the Collateral so sold and, in case of any such failure, such Collateral may again be sold upon like notice.

(c)     Accelerate the time for payment of the Indebtedness, and bring suit at law, in equity, or in admiralty, to recover judgment for any and all amounts due under the Agreement of this Mortgage, and collect the same;

(d)     Take the Collateral, wherever it may be, and hold, lay up, charter, operate, relocate or otherwise use the Collateral as it may deem to be for its best advantage, without legal process and without being responsible for loss or damage, so far as may be permitted by law, accounting only for the net profits arising from such use, and charging upon all receipts from such use or from the sale of the collateral all expenses or losses by reason of such use or sale.  If at any time Mortgagee shall avail itself of the right herein given it to take the Vessel, Mortgagee shall have the right to dock the Vessel at any dock, pier or other premises.  All costs associated with any of the foregoing actions shall be paid by Shipowner or, at Mortgagee's option paid by Mortgagee and reimbursed by Shipowner on demand;

(e)     Without being responsible for loss or damage, sell Collateral at privately conducted public sales at any places and at such times as Mortgagee may specify, and otherwise in a commercially reasonable manner and in conformity with any applicable laws, free from all claims by Shipowner in admiralty, in equity, at law or otherwise; and

(f)     Exercise all other rights and remedies to which it is entitled at law, in equity, in admiralty, or otherwise.

2.6     *Assemble Collateral.*  For the purpose of enforcing any and all rights and remedies under this Mortgage, Mortgagee may (a) require Shipowner to, and Shipowner agrees that it will, at its expense and upon the request of Mortgagee, forthwith assemble all or any part of the Collateral as directed by Mortgagee and make it available at a place designated by Mortgagee which is, in its opinion, reasonably convenient to Mortgagee and Shipowner, whether at the premises of Shipowner or otherwise, and Mortgagee shall be entitled to specific performance of this obligation; (b) to the extent permitted by applicable law, enter, with or without process of law and without breach of the peace, any premise where any of the Collateral is or may be located, and without charge or liability to it seize and

remove such Collateral from such premises, (c) have access to and use Shipowner's books and records relating to the Collateral, including without limitation those in electronic form and (d) prior to the disposition of the Collateral, store or transfer it without charge in or by means of any storage or transportation facility owned or leased by Shipowner process repair or recondition it or otherwise prepare it for disposition in any manner and to the extent Mortgagee deems appropriate and, in connection with such preparation and disposition, use without charge any trademark, trade name, copyright, patent or technical process used by Shipowner.

2.7     *Limitation on Duty of Mortgagee.* Beyond the exercise of reasonable care in the custody thereof, Mortgagee shall have no duty as to any Collateral in its possession or control or in the possession or control of any agent or bailee or any income thereon. Mortgagee shall be deemed to have exercised reasonable care in the custody of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which it accords its own property, and shall not be liable or responsible for any loss or damage to any of the Collateral, or for any diminution in the value thereof by reason of the act or omission of any warehouseman, carrier, forwarding agency, consignee or other agent or bailee selected by Mortgagee in good faith. Shipowner agrees that Mortgagee shall not be obligated to preserve rights against prior parties obligated on any instruments.

2.8     *Appointment of Agent.* At any time or times, in order to comply with any legal requirement in any jurisdiction, Mortgagee may appoint a bank or trust company or one or more other Persons with such power and authority as may be necessary for the effectual operation of the provisions hereof and may be specified in the instrument of appointment.

2.9     *Expenses.* In the event that Shipowner fails to comply with any provisions of this Mortgage or the Security Documents such that the value of any Collateral or the validity, perfection, rank or value of any Collateral hereunder is thereby diminished or potentially diminished or put at risk, Mortgagee may, but shall not be required to, effect such compliance on behalf of Shipowner, and Shipowner shall reimburse Mortgagee for the costs thereof on demand. All insurance expenses and all expenses of protecting, storing, warehousing, appraising, preparing for sale, handling, maintaining and shipping the Collateral, any and all excise, property, sales, and use taxes imposed by any federal, state or local authority on any of the Collateral, all expenses in respect of periodic appraisals and inspections of the Collateral to the extent the same may be requested from time to time, and all expenses in respect of the sale or other disposition thereof shall be borne and paid by Shipowner; and if Shipowner fails to promptly pay any portion thereof when due, Mortgagee may, at its option, but shall not be required to, pay the same and charge Shipowner's account therefor; and Shipowner agrees to reimburse Mortgagee therefor on demand. All sums so paid or incurred by Mortgagee for any of the foregoing and any and all other sums for which Shipowner may become liable hereunder and all costs and expenses (including

reasonable attorneys' fees, legal expenses and court costs) incurred by Mortgagee in enforcing or protecting the Collateral or any of its rights or remedies under this Mortgage or the other Security Documents, shall bear interest at the Default Rate (as that term is defined in the Agreement) in effect from time to time, and be additional Indebtedness hereunder and Shipowner agrees to pay all of the foregoing sums promptly on demand.

2.10   *Shipowner Duties upon Default.*   Until one or more of the Events of Default specified herein shall happen, Shipowner may retain possession and use of the Collateral.  Whenever Mortgagee shall have any right to enter and take possession of the Collateral, Shipowner shall surrender possession of the Collateral to Mortgagee as it demands, and shall pay all expenses incurred by Mortgagee in moving the Collateral to any location.  If any legal proceedings be taken to enforce any right under this Mortgage, Mortgagee shall be entitled as a matter of right, at its option, to the appointment of a receiver of the Collateral and of the earnings due or to become due and arising from its operation.

2.11   *Disposition of Collateral.*  At any judicial sale or public or privately conducted sale of the Collateral, Mortgagee may be a purchaser of the Collateral, and may credit toward its obligation to pay the purchase price any or all of the amounts secured hereby at the time of sale.  A sale made pursuant to this Mortgage, whether under the power of sale hereby granted or pursuant to any judicial proceeding, shall operate to divest all right, title and interest of any nature whatsoever of Shipowner therein and thereto, and shall bar Shipowner, its successors or assigns.  In the event of such a sale of the Collateral, Shipowner shall execute such form of conveyance of the Collateral as Mortgagee may direct.  Mortgagee is hereby appointed attorney-in-fact of Shipowner to execute and deliver to any purchaser aforesaid and is hereby vested with full power and authority to make, in the name and in behalf of Shipowner, a good conveyance of the title to the Collateral so sold so far as may be permitted by law.

2.12   *Application of Funds.*  The proceeds of a sale of the Collateral, insurance pertaining to the Collateral, and any and all other sums received by Mortgagee pursuant to or under the terms of this Mortgage or in any proceedings hereunder, by the application of which has not otherwise been specifically provided for, shall be applied as follows:

FIRST:  To the payment of all expenses, including the expenses of any sale, the expenses of any retaking, attorneys' fees, court costs, and any other expenses incurred by Mortgagee in the protection of its rights or the pursuance of its remedies, and, in Mortgagee's sole discretion, to pay or provide adequate indemnity against liens known to Mortgagee and having or claiming priority over the lien of this Mortgage; and

SECOND:  To the payment of the Indebtedness and all other sums evidenced by the Agreement or hereby not already paid pursuant to the foregoing subsection, the

whether due or not, and of all damages, and other amounts owed, liquidated or otherwise, under the Agreement or hereunder, together with interest thereon at the rate in effect from time to time under the Agreement;

THIRD:   To the payment of any surplus thereafter remaining to Shipowner or to whomsoever else may be entitled thereto.

2.13   *Cumulative Rights and Exercise.*    The rights and remedies provided herein, in the Agreement, or in any other Loan Document, or existing at law, in equity or admiralty, or otherwise, are cumulative. No rights and remedies may be exercised, wholly or in part, from time to time and in any order.  No course of dealing by Mortgagee or failure or delay on the part of Mortgagee in exercising any right or remedy, and no commencement and abandonment thereof, shall operate as a waiver or election with respect to any rights or remedies. Any partial exercise of any rights and/or remedies granted to Mortgagee shall furthermore not be construed as a waiver of any rights and remedies; it being Shipowner's intent and agreement that Mortgagee's rights and remedies shall be cumulative in nature. Shipowner further agrees that, should any Event of Default occur or exist, any waiver or forbearance on the part of Mortgagee to pursue the rights and remedies available to Mortgagee, shall be binding upon Mortgagee only to the extent that Mortgagee specifically agrees to any such waiver or forbearance in writing. Any such written agreed waiver or forbearance on the part of Mortgagee as to one Event of Default shall not be construed as a waiver or forbearance as to any other Event of Default. Time is of the essence of all of Shipowner's duties and obligations hereunder.

3.1    *Sundry Provisions.* The following additional provisions shall apply to this Mortgage:

3.1.1   *Preferred Status.*  Nothing contained herein shall impair or shall be construed as a waiver by Mortgagee of the preferred status of this Mortgage, and any provision which would otherwise constitute such an impairment or waiver shall to such extent be of no force or effect.

3.2    *Severability.*  In the event any provision of this Mortgage is found to be void and unenforceable by a court of competent jurisdiction, the remaining provisions of this Mortgage shall nevertheless be binding upon the Parties with the same effect as though the void or unenforceable part had been severed and deleted, so long as neither Party is deprived of any material benefit contemplated by this Mortgage.

3.3    *Amendment.* No amendment to any provision of this Agreement shall be effective unless this is in writing and signed by each party.

3.4    *Successors and Assigns.*   All the covenants of Shipowner contained in this Mortgage shall bind Shipowner and its successor and assigns and all persons claiming through them and shall inure to the benefit of Mortgagee and its

successors and assigns and all persons claiming through them. Shipowner may not assign or otherwise transfer any of the Agreement, this Mortgage, any other Security Documents, or any rights, remedies or obligations thereunder or related thereto, without the prior written consent of Mortgagee, not to be unreasonably withheld, conditioned, or delayed.

3.5     *Notices.* All notices, demands, and other communications between Shipowner and Mortgagee hereunder or under the Agreement shall be deemed delivered if they are in writing (including facsimile) and mailed by certified mail, return receipt requested (postage prepaid) or actually transmitted or delivered to the applicable party at the respective addresses indicated for them above, or as to each such party, at such other address as shall be designated by such party on thirty (30) days' written notice to the other that complies as to form and delivery with the terms of this section. All such notices, demands, and other communications shall, when mailed, be effective on the third calendar day after being deposited in the mails; or, when transmitted by facsimile or telex, be effective on transmission with confirmed receipt of transmission, respectively. Shipowner agrees that Mortgagee may effect valid service of process upon it in any legal proceeding hereunder or under the Agreement by a mailed notice delivered in accordance with this section, which shall be deemed served upon documented receipt or refusal of delivery.

3.6     *Interpretation.* This Mortgage shall be construed in accordance with the substantive laws of the State of Delaware except to the extent it is subject to the substantive federal laws of the United States of America. The descriptive captions at the head of various articles and sections of this Mortgage are inserted only as a matter of convenient reference, and do not limit or expand the scope or meaning of the paragraphs to which they refer. In this Mortgage, the Agreement, and all documents pertaining hereto, words imparting the singular shall include the plural, and vice versa.

IN WITNESS WHEREOF, Mortgagor has executed and sealed this Mortgage on the date first above written.

Riverfront Development Corporation of Delaware

_____                    By: Megan McClinchey, Deputy Director (SEAL)
Witness

## ACKNOWLEDGMENT

COUNTY OF NEW CASTLE     )
                                   )   ss

STATE OF DELAWARE         )

On this _11th_ day of _May_____, 2016 personally came before me, the undersigned, a Notary Public for the State of Delaware, Megan McGlinchey, who, being by me duly sworn, did depose and say that she is the Deputy Director the Riverfront Development Corporation of Delaware, party to this instrument, and acknowledged the same to be his act and deed and the act and deed of said non-profit corporation, and that his act of executing, and delivering this instrument was duly authorized by the Board of Directors of said non-profit corporation.

GIVEN under my Hand and Seal of office, the day and year aforesaid.

_____
Notary Public

Type Name: _____

My Commission Expires _____

KAREN BOYD
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires August 23, 2017